**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRADITION CHILE AGENTES de VALORES LTDA. and TRADITION (NORTH AMERICA) INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| - against - | ) ) |
| ICAP SECURITIES USA LLC, ICAP CAPITAL MARKETS LLC, SIF ICAP, SA de CV, ICAP SECURITIES CHILE SA (a/k/a SIF ICAP CHILE), ANDRES MOSQUEIRA ARAYA, FELIPE RODRIGUEZ RAMOS, EMILIO VASQUEZ, MARIA LAURA DUTTO GIMENEZ, GONZALO SIERRA BOU, CRISTOBAL WARNKEN MATTE, ENRIQUE VEY MOYANO, EDUARDO FERNANDEZ, RODRIGO ATENAS VELIZ, DENISE SUNNAH, and CHRISTIAN SCHULTZ, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 09 Civ. 10343 (WHP)

---

**DEFENDANTS SIF ICAP, S.A. de C.V. AND SIF ICAP CHILE S.A.'s MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' APPLICATION FOR MANDATORY INJUNCTIVE RELIEF**

---

John P. Barry
Howard Robbins
Mark A. Saloman
Proskauer Rose LLP
One Newark Center, 18th Floor
Newark, New Jersey 07102
973.274.3200
973.274.3299 (Fax)

*Attorneys for defendants*
*SIF ICAP, S.A. de C.V. and*
*SIF ICAP CHILE S.A.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 5

ARGUMENT ....................................................................................................... 5

I.    CHILEAN LAW ESTABLISHES THAT ALL LABOR DISPUTES
      CONCERNING CITIZENS OF CHILE ARE SUBJECT TO CHILEAN
      LAW AND THE EXCLUSIVE JURISDICTION OF THE CHILEAN
      LABOR COURT ....................................................................................... 5

II.   TRADITION'S ENGLISH CONTRACTS ARE UNENFORCEABLE AS
      WRITTEN BECAUSE THEY VIOLATE CHILEAN LAW ....................... 7

      A.    The English Contracts Are Null And Void Because They Were Not
            Provided To The Chilean Employees In Spanish. .................................. 8

      B.    The English Contracts Are Null And Void Because They Impermissibly
            Designate That The Laws Of New York, Not Chile, Govern Disputes With
            The Former Employees. .......................................................................... 9

      C.    The English Contracts Are Null And Void Because They Impermissibly
            Mandate That Disputes With The Chilean Employees Proceed In
            Arbitration And In Court In New York, Not Chile. ................................. 10

      D.    The English Contracts Are Null And Void Because They Impermissibly
            Restrain The Chilean Employees' Freedom To Work In Chile. ............... 10

      E.    Service Of Process Upon The Chilean Employees Remains Ineffective
            Under Chilean Law. .............................................................................. 13

      F.    Reforming the English Contracts Is Inappropriate. ............................... 14

III.  BECAUSE TRADITION KNEW THAT ITS ENGLISH CONTRACTS ARE
      UNENFORCEABLE IN CHILE, ITS BLATANT FORUM SHOPPING
      SHOULD BE REJECTED BY THE COURT .............................................. 15

      A.    Tradition's Reliance Upon A Forum Selection Clause—Known To Be
            Unlawful In Chile—In The Hope Of Obtaining Injunctive Relief In New
            York—That Is Also Unlawful In Chile—Is Impermissible Forum
            Shopping In Its Purest Form. ................................................................. 15

      B.    Tradition's Forum Selection Clause Is Unenforceable Under New York
            Law. ...................................................................................................... 16

i

    C.    The Ambiguity Created By The English Contracts And The Spanish Agreements Must Be Construed Against Tradition...............................17

    D.    Tradition's Abuse Of Process Is A Waste Of Judicial Resources Because Chile Will Not Honor An Award Or Order In Tradition's Favor.........................18

IV.    **TRADITION IS JUDICIALLY ESTOPPED FROM ASSERTING THAT IT HAS BEEN HARMED BY THE SAME HIRING PRACTICES THAT IT ADVOCATES ELSEWHERE**...................................................................21

V.    **THE FOREIGN DEFENDANTS ARE NOT SUBJECT TO THE JURISDICTION OF NEW YORK AND THE FORUM IS ENTIRELY INCONVENIENT**.........................................................................................22

    A.    Tradition's Application Should Be Denied Because It Cannot Establish Jurisdiction Over the Foreign Defendants. .............................................22

        1.    Tradition has failed to establish long-arm jurisdiction under CPLR Section 302 (a)(1). ..................................................................23

            a.    The Foreign Defendants do not "transact business" in New York. ...............................................................................23

            b.    Tradition's claims do not arise out of any acts or omissions performed in New York. ..............................................26

        2.    The Complaint fails because Tradition has not demonstrated—and cannot—that SIF ICAP has the requisite "minimum contacts" with New York.............................................................................29

    B.    Application Of The Doctrine Of Forum *Non Conveniens* Warrants Denial Of Tradition's Application Because The Action Belongs In Chile, Not New York..............................................................................................30

        1.    Chile is an adequate alternative forum as a matter of law. .........................31

        2.    Tradition's forum selection clause has no effect here. ..............................32

        3.    The private and public interest factors strongly disfavor proceeding in New York.............................................................................32

            a.    The private interest factors favor disfavor litigation in New York because all documents and witnesses are located in Chile or elsewhere in Latin America and all of the relevant documents and laws are in Spanish. .............................32

            b.    Litigation in New York causes undue inconvenience and expense to all parties....................................................34

|  |  | 4. | The public interest factors strongly disfavor proceeding in New York. | 35 |

**VI.  TRADITION CANNOT ESTABLISH ANY OF THE ELEMENTS NECESSARY TO OBTAIN A MANDATORY PRELIMINARY INJUNCTION** ...................................................................................................37

A.  Tradition Cannot Demonstrate A Likelihood Of Success On The Merits Of Its Claims Because The English Contracts Are Entirely Unenforceable As A Matter Of Chilean Law. ....................................................................................37

    1.  The (unenforceable) English Contracts protect no legitimate interest of Tradition........................................................................................39

    2.  The (unenforceable) English Contracts impose severe undue hardship upon the Chilean Employees.........................................................41

B.  Tradition Cannot Demonstrate Irreparable Injury Because, As Tradition Itself Has Stated, The "Alleged Loss Of Customer Relationships Does Not Constitute Irreparable Harm".............................................................................42

C.  The Balance Of The Equities Is One-Sided In Favor Of Denial Of Injunctive Relief...................................................................................................45

D.  Tradition Cannot Demonstrate A Likelihood Of Success On The Merits Of Its Claims Against SIF ICAP........................................................................45

    1.  Tradition cannot prevail on its tortious interference claims. ....................45

    2.  Tradition cannot prevail on its unfair competition claim..........................46

    3.  Tradition cannot prevail on its federal claims...........................................48

**VII.  THE ENTIRELY FRIVOLOUS NATURE OF TRADITION'S APPLICATION FOR INJUNCTIVE RELIEF, ITS MISREPRESENTATIONS TO THE COURT, AND LACK OF CANDOR, WARRANT THE REIMBURSEMENT OF ALL FEES AND COSTS INCURRED BY SIF ICAP IN THE DEFENSE OF THIS ACTION** .......................50

CONCLUSION....................................................................................................................50

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*67 Wall St. Co. v Franklin Natl. Bank,*
   37 N.Y.2d 245, 371 N.Y.S.2d 915, 333 N.E.2d 184 (1975)....................................................17

*Abe's Rooms, Inc. v. Space Hunters, Inc.,*
   38 A.D.3d 690, 833 N.Y.S.2d 138 (2d Dep't 2007) .............................................................46

*Aetna Ins. Co. v. Capasso,*
   75 N.Y.2d 860 (1990) .........................................................................................................37

*Am. Broadcasting Cos., Inc. v. Wolf,*
   52 N.Y.2d 394, 438 N.Y.S.2d 487 (1981) ...........................................................................41

*Andolina Shipping Ltd. v. TBS Eurolines Ltd.,*
   84 F.Supp.2d 527 (S.D.N.Y. 2000) .....................................................................................20

*Arrowsmith v. United Press Int'l,*
   320 F.2d 219 (2d Cir. 1963)................................................................................................23

*Baer v. Chase,*
   No. Civ.A. 02-CV-2334 (JAP), 2004 WL 350050 (D.N.J. Feb. 20, 2004) ............................14

*Baird, Patrick & Co., Inc. v. Maxcor Financial, Inc.,*
   NASD Case No. 03-7325 (N.Y. April 13, 2006).....................................................................46

*Base Metal Trading SA v. Russian Aluminum,*
   253 F. Supp. 2d 681 (S.D.N.Y. 2003)...............................................................25, 26, 33, 35

*BDO Seidman v. Hirshberg,*
   93 N.Y.2d 382, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999)........................................38, 39

*Bear, Stearns & Co. Inc., v. Sharon,*
   550 F. Supp. 2d 174 (D. Mass. 2008) .................................................................................41

*Beatie & Osborn LLP v. Patriot Sci. Corp.,*
   431 F. Supp. 2d 367 (S.D.N.Y. 2006)..................................................................................17

*Bell v. Hood,*
   327 U.S. 678 (1946).............................................................................................................48

*Bensusan Restaurant Corp. v. King,*
   126 F.3d 25 (2d Cir. 1997)..................................................................................................29

*Bigio v. Coca-Cola Co.,*
    448 F.3d 176 (2d Cir. 2006)................................................................................32

*BlackRock, Inc. v. Schroders PLC,*
    No. 07 Civ. 3183 (PKL), 2007 U.S. Dist. LEXIS 39279 (S.D.N.Y. May 30, 2007)..............15

*Blanco v. Banco Industrial de Venezuela, S.A.,*
    997 F.2d 974 (2d Cir. 1993)................................................................................34

*Bozell Group, Inc. v. Carpet Co-op of America Ass'n, Inc.,*
    No. 00 Civ. 1248 (RWS), 2000 U.S. Dist. LEXIS 15088 (S.D.N.Y. Oct 11, 2000).........23, 24

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977)........................................................................................40

*Bulk Carriers Ltd. v. Oldendorff Carriers GMBH & Co., KG,*
    No. 01-Civ-11777, 2002 WL 31478198 (S.D.N.Y. Nov. 6, 2002)......................................20

*Calavo Growers of Cal. v. Generali Belgium,*
    632 F.2d 963 (2d Cir. 1980)..........................................................................35, 36

*Campaniello Imports, Ltd. v. Saporiti Italia Sp.A.,* 95 Civ. 7685 (RPP), 1996 U.S. Dist.
    LEXIS 11064 (S.D.N.Y. Aug. 2, 1996)....................................................................25

*Carey v. Bayerische Hypo-Und Vereinsbank AG,*
    370 F.3d 234 (2d Cir. 2004)................................................................................30

*City of New York v. Black Garter,*
    179 Misc. 2d 597, 685 N.Y.S.2d 606 (Sup. Ct. Richmond County 1999) ...................... 21

*Cliff v. R.R.S., Inc.,*
    207 A.D.2d 17, 620 N.Y.S. 2d 190 (3d Dep't 1994)..................................................43

*Columbia Ribbon & Carbon Mfg. Co., Inc. v. A-1-A Corp.,*
    42 N.Y.2d 496 (N.Y. 1977) ................................................................................39

*Conte v. Flota Mercante del Estado,*
    277 F.2d 664 (2d Cir. 1960)................................................................................36

*Croman v. Wacholder,*
    2 A.D.3d 140, 764 N.Y.S.2d 219 (3rd Dep't 2003).................................................17

*Cruz v. Maritime Co. of Philippines,*
    549 F. Supp. 285 (S.D.N.Y. 1982) ......................................................................36

*D.H. Blair & Co. v. Gottdiener,*
    462 F.3d 95 (2d Cir. 2006)................................................................................16

*D&L Holdings, LLC v. RCG Goldman Co. LLC*,
   287 A.D.2d 65, 734 N.Y.S.2d 25 (1st Dep't 2001) ..................................................21

*Earthweb Inc. v. Mark Schlack*,
   71 F. Supp. 2d 299 (S.D.N.Y. 1999)........................................................................14

*ENV Services, Inc. v. Maxime, et. al.*,
   10 Misc. 3d 1054(A), 809 N.Y.S.2d 481, 2005 N.Y. Misc. LEXIS 2690 (Sup. Ct.
   Nassau County Nov. 28, 2005) .................................................................................44

*Estate of Ferdinand Marcos*,
   94 F.3d 539 (9th Cir. 1996) .....................................................................................19

*Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London*,
   147 F.3d 118 (2d Cir. 1998), *cert.. denied*, 1999 U.S. LEXIS 1048 (1999).....................27, 28

*Falconwood Fin. Corp. v. Griffin*,
   838 F. Supp. 836 (S.D.N.Y. 1993) ..........................................................................18

*Foster Wheeler Iberia S.A. v. Mapfre Empresas S.A.S.*,
   No. 601916/06, 2007 NY Slip Op 50619U (N.Y. Sup. Ct. Mar. 27, 2007) ......................31, 33

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
   No. 04 Civ. 5238 (GEL), 2005 U.S. Dist. LEXIS 12397 (S.D.N.Y June 22, 2005) ..............24

*Fusco v. Fusco*,
   36 A.D.3d 589, 829 N.Y.S.2d 138 (2d Dep't 2007)................................................46

*GCG Int'l, Inc. v. Eberhardt*,
   No. 05 Civ. 2422 (DC), 2005 U.S. Dist. LEXIS 23877 (S.D.N.Y. Oct. 17, 2005) ..........23, 26

*GFI Securities LLC v. Tradition Asiel Securities Inc.*,
   21 Misc.3d 1111(A), 873 N.Y.S.2d 511, 2008 WL 4559921 (N.Y.Sup. July 28,
   2008), *affirmed* 61 A.D.3d 586, 878 N.Y.S.2d 689 (1st Dep't 2009) ................................4, 22

*Gilstrap v. Radianz Ltd.*,
   443 F. Supp. 2d 474 (S.D.N.Y. 2006).....................................................................36

*Great Lakes Carbon Corp. v. Koch Industries Inc.*,
   497 F.Supp. 462 (S.D.N.Y. 1980) ...........................................................................40

*Gulf Oil v. Gilbert*,
   330 U.S. 501 (1947)...............................................................................30, 32, 35, 36

*H. Meer Dental Supply Co. v. Commission*,
   269 A.D.2d 662, 702 N.Y.S.2d 463 (3d Dep't 2000)..............................................46

*Hamilton v. MacDonald,*
    503 F.2d 1138 (9th Cir. 1974) ........................................................................19

*Hanson Trust PLC v. ML SCM Acquisition, Inc.,*
    781 F.2d 264 (2d Cir. 1986)..........................................................................40

*Hanson v. Denckla,*
    357 U.S. 235 (1958)...........................................................................23, 26, 29

*Hasakis v. Trade Bulkers, Inc.,*
    690 F. Supp. 260 (S.D.N.Y. 1988) ..............................................................36

*Heartland Sec. Corp. v. Gerstenblatt,*
    No. 99 CIV 3694, 2000 WL 303274 (S.D.N.Y. Mar. 22, 2000) ..............40

*Hope's Windows, Inc. v. Woodbridge Glass, Inc.,*
    No. 04-CV-00378 (JTE) (W.D.N.Y. Dec. 6, 2004)..................................18

*In re Air Crash near Peixoto de Azeveda, Brazil,*
    574 F. Supp. 2d 272, 289 (S.D.N.Y. 2008)..............................................36

*Intercapital Debt Trading Limited v. Cantor Fitzgerald L.P.,*
    213 N.Y.I.J. 28 (Col 3) (Sup. Ct. N.Y. County Mar. 9, 1995)..........46, 47

*Intercontinental Monetary Corp. v. Performance Guarantees, Inc.,*
    705 F. Supp. 144 (S.D.N.Y. 1989 ..............................................................18

*International Association of Machinists and Aerospace Workers v. Werner-Matsuda,*
    390 F. Supp. 2d 479 (D. Md. 2005)............................................................49

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945)......................................................................................29

*Ioannides v. Marika Mar. Corp.,*
    928 F. Supp. 374 (S.D.N.Y. 1996) ............................................................36

*Iragorri v. United Techs. Corp.,*
    274 F.3d 65 (2d Cir. 2001).................................................................. passim

*Iron Mountain Information Mgmt., Inc. v. Taddeo,*
    455 F.Supp.2d 124 (E.D.N.Y. 2006) ..........................................................44

*Ivy Mar Co., Inc. v. C.R. Seasons Ltd.,*
    907 F. Supp. 547 (E.D.N.Y. 1995) ........................................................39, 42

*Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,*
    160 F. Supp. 2d 722, 739 (S.D.N.Y. 2001)................................................26

*Jacobson v Sassower,*
    66 N.Y.2d 991, 499 N.Y.S.2d 381, 489 N.E.2d 1283 (1985)..................................17

*Jazini v. Nissan Motor Co., Ltd.,*
    148 F.3d 181 (2d Cir. 1998)........................................................................23

*John Labatt Ltd. v. Onex Corp.,*
    890 F.Supp. 235 (S.D.N.Y. 1995) ...............................................................40

*Jones v. Weibrecht,*
    901 F.2d 17 (2d Cir. 1990)........................................................................17

*JSC Surgutneftegaz v. President & Fellows of Harvard College,*
    No. 04-civ-6069 (RCC), 2005 WL 1863676 (S.D.N.Y. Aug. 3, 2005)..................17

*K. Bell & Assocs. v. Lloyd's Underwriters,*
    827 F. Supp. 985 (S.D.N.Y. 1993) ..............................................................38

*Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.,*
    956 F.Supp. 1131 (S.D.N.Y. 1997) .............................................................26

*Kalb, Voorhis & Co. v. Am. Fin. Corp.,*
    8 F.3d 130 (2d Cir. 1993)...........................................................................6

*Kaufman v. Kehler,*
    25 A.D.3d 765, 808 N.Y.S.2d 764 (2d Dep't 2006) ......................................22

*Kimco of N.Y., Inc. v. Devon,*
    163 A.D.2d 573, 576, 558 N.Y.S.2d 630, 633 (2d Dep't 1990) ......................21

*Lama Holding Co. v. Smith Barney Inc.,*
    88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996) .....................................................45

*Levy v. Braverman,*
    24 A.D.2d 430, 260 N.Y.S.2d 681 (1st Dep't 1965)......................................22

*Lorca, Castillo S.A.C. v Pettibone Corp.,*
    No. 81 C 2863, 1982 U.S. Dist. LEXIS 13480 (N.D. Ill. May 23, 1982) .............33

*Lory Fabrics, Inc. v. Dress Rehearsal, Inc.,*
    78 A.D.2d 262, 434 N.Y.S.2d 359 (1st Dep't 1980) ......................................18

*M/S Bremen v. Zapata Off-Shore Co.,*
    407 U.S. 1 (1972)...................................................................................17

*Maxon v. Franklin Traffic Services, Inc.,*
    261 A.D.2d 830 (N.Y. App. Div. 4th Dep't 1999) .........................................39

*McGee v. Int'l Life Ins. Co.*,
  355 U.S. 220 (1957)................................................................................................30

*McKee Electric Co. v. Rauland-Borg Corp.*,
  20 N.Y.2d 377 (1967) ......................................................................................29, 30

*Medical Soc. of State of N.Y. v. Toia*,
  560 F.2d 535 (2d Cir. 1977)...................................................................................40

*Milliken v. Meyer*,
  311 U.S. 457 (1940)................................................................................................29

*Muollo v. Crestwood Vill. Inc.*,
  155 A.D.2d 420, 547 N.Y.S.2d 87 (2d Dep't 1989) ..............................................25

*Murray v. BBC*,
  81 F.3d 287 (2d Cir. 1996).....................................................................................35

*NBT Bancorp Inc. v. Fleet/Norstar Fin, Group, Inc.*,
  87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996) .............................................................46

*Netherby Ltd. v. Jones Apparel Group, Inc.*,
  No. 04 Civ. 7028 (GEL), 2007 U.S. Dist. LEXIS 25720 (S.D.N.Y. April 5, 2007) ..............14

*Niv v. Hilton Hotels Corp.*,
  No. 06 Civ. 7839 (PKL), 2008 WL 4849334 (S.D.N.Y. Nov. 10, 2008) ................34

*Nordic Bank PLC v. Trend Group, Ltd.*,
  619 F. Supp. 542 (S.D.N.Y. 1985) .........................................................................38

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
  416 F.3d 146 (2d Cir. 2005)....................................................................................30

*Online Payment Solutions Inc. v. Svenska Handelsbanken AB*,
  638 F. Supp. 2d 375 (S.D.N.Y. 2009).....................................................................34

*P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*,
  428 F.3d 504 (3d Cir. 2005)....................................................................................48

*Painewebber Inc. v. Westgate Group, Inc.*,
  748 F. Supp. 115 (S.D.N.Y. 1990) .........................................................................23

*Painewebber Inc. v. WHV, Inc.*,
  No. 95 Civ. 0052 (LMM), 1995 U.S. Dist. LEXIS 6514 (S.D.N.Y. May 16, 1995)..............24

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Parsons*,
  508 F.2d 969 (2d Cir. 1974)....................................................................................20

*Phillip v. Fairfield Univ.*,
　118 F.3d 131 (2d Cir. 1997)............................................................................37

*Phoenix Bulk Carriers Ltd. v. Oldendorff Carriers Gmbh & Co., KG*,
　2002 WL 31478198 (S.D.N.Y. Nov. 6, 2002)................................................20

*Pieczenik v. Dolan*,
　03 Civ. 6336 (SAS), 2003 U.S. Dist. LEXIS 23295 (S.D.N.Y. Dec. 30, 2003).....................25

*Piper Aircraft Co. v. Reyno*,
　454 U.S. 235 (1981)................................................................................15, 30

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
　329 F.3d 64 (2d Cir. 2003)...........................................................................31

*Prebon Fin. Prods., Inc. v. GFI Group, Inc.*,
　Nos. 603085/00, 115749/00 (Sup. Ct. N.Y. County Oct. 31, 2000)...............................44, 47

*Precision Concepts, Inc. v. Bonsanti*,
　172 A.D.2d 737, 569 N.Y.S.2d 124 (2d Dep't 1991) ..........................................44

*Premier Lending Servs., Inc. v. J.L.J. Assocs.*,
　924 F. Supp. 13 (S.D.N.Y. 1996) ...............................................................25

*Prudential Home Mortgage Co., Inc. v. Neildan Constr. Corp.*,
　209 A.D.2d 394, 618 N.Y.S.2d 108 (2d Dep't 1994) ...................................... 21

*Purchasing Assoc. v. Weitz*,
　13 N.Y.2d 267, 246 N.Y.S.2d 600 (1963) ...................................................38, 45

*R. Maganlal & Co. v. M.G. Chem. Co., Inc.*,
　942 F.2d 164 (2d Cir. 1991).........................................................................31

*Ray Kline, Inc. v. DaVega-City Radio*,
　168 Misc. 185, 4 N.Y.S.2d 541 (Sup. Ct. Westchester County 1938)...................................22

*Red Bull Assocs. v. Best Western Int'l., Inc.*,
　862 F.2d 963 (2d Cir. 1988)........................................................................18

*Reed, Roberts Assocs., Inc. v. Strauman*,
　40 N.Y.2d 303, 386 N.Y.S.2d 677 (1976) ...................................................38, 44

*Rovic v. Hanson*,
　No. CV599617S, 2000 WL 1624506 (Conn. Super. Ct. Oct. 2, 2000) ...................................40

*Saab v. Citibank, N.A.*,
　No. 00 Civ. 6784, 2001 WL 1382577 (S.D.N.Y. Nov. 7, 2001) ............................................35

*Samuel-Rozenbaum USA, Inc. v. Felcher*,
    292 A.D.2d 214, 741 N.Y.S.2d 1 (1st Dep't 2002) ...................................................44

*Savin v. Ranier*,
    898 F.2d 304 (2d Cir. 1990)...........................................................................................23

*Schertenleib v. Traum*,
    589 F.2d 1156 (2d Cir. 1978)..........................................................................................35

*Scott v. General Iron & Welding Co., Inc.*,
    171 Conn. 132 (Conn. 1976)...........................................................................................42

*Sherman & Co. v. Salton Maxim Housewares, Inc.*,
    94 F. Supp. 2d 817 (E.D. Mich. 2000)........................................................................48, 49

*Sinochem Int'l. Co. Ltd. v. Malaysia Int'l. Shipping Corp.*,
    127 S.Ct. 1184 (2007)......................................................................................................30

*Spencer Trask Ventures, Inc. v. Archos S.A.*
    Civ. 1169 (LAP), 2002 U.S. Dist. LEXIS 4396 (S.D.N.Y. March 18, 2002) .........................24

*SportsChannel Am. Assocs. v. Nat'l Hockey League*,
    186 A.D.2d 417, 589 N.Y.S.2d 2 (1st Dep't 1992) ..........................................................43

*State Wide Photocopy Corp. v. Tokai Financial, Inc.*,
    909 F. Supp. 137 (S.D.N.Y. 1995))................................................................................49

*Sterling Fifth Assocs. v. Carpentile Corp.*,
    5 A.D.3d 328, 774 N.Y.S.2d 140 (1st Dep't 2004) ..........................................................43

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)..........................................................................................................18

*Terwilliger v. Terwilliger*,
    205 F.3d 240 (2d Cir. 2000)............................................................................................14

*U.S. Re Cos. v. Scheerer*,
    41 A.D.3d 152, 838 N.Y.S.2d 37 (1st Dep't 2007) ..........................................................43

*Universal Licensing Corp. v. Paola del Lungo S.p.A.*,
    293 F.3d 579, 580-81 (2d Cir. 2002) ..............................................................................27

*Varnelo v. Eastwind Transport, Ltd.*,
    No. 02 Civ. 2084 (KMW)(AJP), 2003 U.S. Dist. LEXIS 1424
    (S.D.N.Y. Feb. 3, 2003)...............................................................................................25, 36

*Virginian Ry. Co. v. System Fed'n No. 40*,
    300 U.S. 515 (1937).........................................................................................................19

*Walter Karl, Inc. v. Wood*,
  137 A.D.2d 22, 528 N.Y.S.2d 94 (2d Dep't 1988) ...................................................44

*Water Energizers Ltd. v. Water Energizers, Inc.*,
  788 F. Supp. 208 (S.D.N.Y. 1992) .......................................................................18

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
  8 N.Y.3d 422, 835 N.Y.S.2d 530 (2007) .............................................................45

*Zamer v. Diliddo*,
  No. 97-CV-32S(H), 1997 WL 578753 (W.D.N.Y. Aug. 18, 1997) .................17, 18

STATUTES AND OTHER AUTHORITIES

18 U.S.C. § 2701(a) .................................................................................................49

28 U.S.C. § 1927 ......................................................................................................50

*CPLR § 302 (a)(1)* ...........................................................................................23, 26

*Restatement (Third) of Foreign Relations* (1987) ................................................28

*United Nations Convention on the Recognition and Enforcement of Foreign Arbitral
  Awards*, Art. V 2 (b) (New York, 1958) ..............................................................20

Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2945 ..............19

CHILEAN AUTHORITIES

Chilean Procedural Code ....................................................................................13, 19

*Código Civil de la República de Chile* ...........................................................5, 7, 15

*Código del Trabajo de Chile* ........................................5, 6, 7, 8, 9, 10, 15, 16, 19

*Constitución Política de la República de Chile* .............................................7, 8, 10

Court of Appeals of Santiago, No. 11100-2004 (April 6, 2009) ..............................12

Court of Appeals of Santiago, No. 3354-2008 (May 6, 2009) .................................12

Court of Appeals of Santiago, No. 8165-2006 (May 20, 2009) ...............................11

Labor Department, Decision No. 3416 .......................................................................6

Labor Department, Decision No. 5620/300 ..............................................................12

Labor Department, Order No. 1124 .......................................................................9, 16

Defendants SIF ICAP, S.A. de C.V. ("SIF ICAP México") and SIF ICAP Chile S.A.

("SIF ICAP Chile")[1] submit this memorandum in support of their opposition to the application

for injunctive relief of Tradition Chile Agentes de Valores LTDA ("Tradition Chile") and

Tradition (North America) Inc. (collectively referenced as "Tradition.").[2]

## PRELIMINARY STATEMENT

> THE COURT:  So my first question is, if they left on December 7th, why did you
> wait until December 21 to come into court?
>
> MR. LEVIN:  It is a very good question and I have to address the court in that
> respect.  The business, the geographical location of the underlying business is in
> Chile.  They broker into the United States with U.S. brokers in conjunction, but
> the underlying business is in Chile.  Surely the court would not want us to rush to
> court without any proof or evidence, and surely the court would expect us to
> *conduct a thorough investigation before we make any allegations*, especially
> allegations of this serious level.[3]

This representation—made by an officer of Tradition and of this Court—is either a misinformed

statement or a deliberate attempt to mislead the Court.  Either way, Tradition withheld or

misrepresented *numerous* material facts in its application for injunctive relief which any

investigation, much less a "thorough" one, would have surely revealed.  For these and the many

other reasons addressed below, Tradition's application should be denied.

---

[1] Improperly pled as "ICAP Securities Chile SA (a/k/a SIF ICAP Chile)."

[2] SIF ICAP Chile has not been effectively served with the Complaint in this action under the methods required by the *Convención Interamericana sobre Exhortos o Cartas Rogatorias*, and specifically reserves, and does not waive, all grounds for dismissal of this action.  For ease of reference only, SIF ICAP México and SIF ICAP Chile are collectively referenced as "SIF ICAP" and the Chilean citizens named as defendants in this case are collectively referenced as the "Chilean Employees" and, collectively with SIF ICAP, as the "Foreign Defendants."  The Chilean Employees also have not been served with the Complaint under Chilean law.

[3] Saloman Decl., Exhibit 1: Tr. 5:8-19 (emphasis added).  A copy of select pages of the transcript of hearing on Tradition's application for temporary injunctive relief, recorded on December 21, 2009 before The Honorable William H. Pauley III, U.S. D.J. ("Tr.___:___"), are annexed to the Declaration of Mark A. Saloman, Esq. ("Saloman Decl."), submitted herewith and incorporated herein by reference.

*First*, Tradition misleads the Court by asserting that the English language contracts it seeks to enforce over the Chilean Employees control their respective employment relationships with Tradition.  This is false.  These English Contracts are trumped by Spanish employment agreements between Tradition and the Chilean Employees which contain *none* of the material terms sought to be enforced through Tradition's application for injunctive relief.  Remarkably, Tradition's 196-paragraph Complaint, 49-page brief, four affidavits, and two oral arguments conspicuously omit *any* reference whatsoever to Tradition's Spanish employment agreements with the Chilean Employees.[4]

*Second*, Tradition blatantly misrepresents to the Court that the English Contracts are both enforceable over the Chilean Employees and SIF ICAP Chile *and* create the basis for jurisdiction over the Foreign Defendants in this Court:

> THE COURT:  All right.  How does this court have jurisdiction to enjoin Chilean nationals in Chile and a Mexican corporation?
>
> MR. LEVIN:  . . . With regard to your Honor's question, it is no small matter that jurisdiction of this court *lies and begins with the underlying employment agreements*.   The underlying employment agreements say clearly and unequivocally that this court shall be bestowed exclusive jurisdiction of these matters.  Each individual assigned to this court, to the extent it is assignable, the right to hear this matter exclusively and has waived the right to object.

Tr: 17:1 to 18-2 (emphasis added).  Yet, even the most rudimentary investigation would have revealed that the English contracts are not enforceable over the Chilean employees because they: (a) were not written in Spanish as is required by Chilean law; (b) violate Chilean law and public policy by designating that the laws of New York, not Chile, govern disputes between them; (c) impermissibly mandate that disputes proceed in arbitration and court in New York, not Chile

---

[4] A copy of one such Spanish Agreement, translated into English, is annexed to the Saloman Decl. as Exhibit 2.

which is in violation of the Chilean Labor Code; and (d) impermissibly restrain the Chilean Employees' freedom to work as is set forth in the Chilean Constitution.

Any investigation would have likewise plainly revealed that this Court lacks jurisdiction over the Foreign Defendants. As to SIF ICAP México, it is: a Mexican company and is not licensed to do business in New York; maintains no accounts or clients in New York; does not solicit business, accounts, or clients in New York; does not maintain an office in New York; has no employees in New York; and owns no property in New York. As to SIF ICAP Chile, it is: located in Santiago, Chile; not licensed to do business in New York; maintains no accounts or clients in New York; does not solicit business, accounts, or clients in New York; does not maintain an office in New York; has no employees in New York; and owns no property in New York. The same is true for the Chilean Employees, who are citizens and residents of Chile; worked for Tradition Chile in Santiago; received and accepted Spanish Agreements with Tradition Chile in Santiago; performed their obligations under their Spanish Agreements in Chile; have no business or clients in New York; *all* of the improper conduct alleged in the Complaint—which is denied—occurred in Chile; and, significantly, one of the Chilean employees has already filed an action against Tradition Chile in Chile. In short, this Court cannot legitimately exercise jurisdiction over the Foreign Defendants because they have not purposefully availed themselves of the laws of the State of New York and otherwise lack the requisite minimum contacts to this venue. To hold otherwise would be to condone Tradition's blatant and impermissible forum shopping.

This is also a textbook case for application of the doctrine of forum *non conveniens*, which warrants that the matter should proceed, if at all, in Chile, not New York. Chile is an appropriate alternative forum as Tradition and the Foreign Defendants are amenable to and

3

subject to service of process there.  Moreover, Tradition brought this litigation in New York for no purpose other than to compel enforcement of post-employment restraints and arbitration provisions that are patently unenforceable over the Chilean Employees in their native country. Tradition cannot rely upon the New York forum selection clause in the (unenforceable) English Contracts because such a clause is unlawful and invalid as a matter of Chilean law.  The private and public interest factors also strongly demonstrate that litigation in New York is genuinely inconvenient and suit before the Chilean courts, where at least one lawsuit by a Chilean Employee against Tradition Chile is already pending, is dramatically preferable.

*Third*, Tradition disingenuously asserts that it appears before the Court with clean hands. In reality, Tradition engages in the identical hiring practices, right here in New York.  Tradition has extensively and successfully argued before the New York courts that the conduct they now claim to be unlawful in Chile is routine, commonplace, and perfectly acceptable in New York. Tradition's own successful arguments support SIF ICAP's opposition here and estop it from seeking relief from this Court.[5]

*Fourth*, Tradition's application should be rejected because it is futile and a waste of judicial resources.  Even if Tradition were to (i) successfully overcome the many procedural hurdles associated with this application for international injunctive relief, (ii) satisfy the substantive requirements for a preliminary injunction, and (iii) obtain an award in arbitration before the AAA, such award would be unenforceable.  This is so because the international convention governing foreign arbitral awards (of which Chile and the United States are parties),

---

[5] A true copy of Tradition's brief in successful opposition to an application for injunctive relief brought against it in the matter of *GFI Securities LLC v. Tradition Asiel Securities Inc.*, 21 Misc.3d 1111(A), 873 N.Y.S.2d 511, 2008 WL 4559921 (N.Y.Sup. July 28, 2008), *affirmed* 61 A.D.3d 586, 878 N.Y.S.2d 689 (1st Dep't 2009) (hereinafter, "Tradition Brf."), is annexed to the Saloman Decl. as Exhibit 3.  For the Court's convenience, all unpublished English language decisions are annexed to SIF ICAP's Appendix of Unpublished Cases.

4

specifically exempts from enforcement awards which are contrary to the public policy of the citizen's home country.

For these and other reasons more fully explained below, Tradition cannot establish a right to mandatory injunctive relief. Because the contracts at issue are unenforceable—and unlawful—under Chilean law, it certainly cannot demonstrate a likelihood of success on the merits concerning its breach of contract claims against the Foreign Defendants. Likewise, its tort claims against SIF ICAP are unsustainable under both Chilean and New York law.

Its application for injunctive relief is, therefore, and unsustainable and the Court should impose sanctions upon Tradition due to its deliberate abuse of judicial process.

## STATEMENT OF FACTS

SIF ICAP relies upon the facts as set forth in the Declarations of Rodolfo Sánchez Arriola Luna ("Sánchez Decl."), Andrés Roberto Mosqueira Araya ("Mosqueira Decl."), and Jorge Bofill ("Bofill Decl."), submitted herewith and incorporated herein by reference.

## ARGUMENT

### I.    CHILEAN LAW ESTABLISHES THAT ALL LABOR DISPUTES CONCERNING CITIZENS OF CHILE ARE SUBJECT TO CHILEAN LAW AND THE EXCLUSIVE JURISDICTION OF THE CHILEAN LABOR COURT

Adherence to Chilean law "is obligatory for all inhabitants of the Republic, even foreigners." *Código Civil de la República de Chile* [hereinafter "Civil Code"], Preliminary Title, § 3, Art. 14 (2008);[6] *accord* Civil Code, Art. 15 ("Chilean citizens shall remain subject to the laws of Chile governing civil rights"). Because the Chilean Employees and SIF ICAP Chile are Chilean residents and Chile is the site of all alleged improper conduct, Chilean law, including Chile's Labor Code, governs the issues in this case. *See Código del Trabajo* [hereinafter "Labor

---

[6] An English translation of select sections of the Civil Code is annexed to the Saloman Decl. as Exhibit 4.

Code"], Art. 1.[7] ("Labor relations between employers and workers will be regulated by this Code and its supplementary laws."). *See also Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (laws of jurisdiction with greatest interest in the litigation must be applied).

As the Chilean government has made clear, the importance Chile places upon the protection of the rights of its workers cannot be understated:

> The first clause of Article 5 of the Labor Code provides as follows: "The exercise of the powers of an employer as recognized by the law is limited by the constitutional guarantees of workers, particularly when they may affect their personal or private life or their dignity." As indicated by this Office, among others, . . . the labor legislation "has expressed recognition of the full effectiveness of the fundamental rights of workers in a company, which has been referred to by doctrine as "citizenship in enterprises," a recognition that has been invoked as constituting the overall concept for indispensable conformity and determination when interpreting a set of rules governing relations within a company. This positioning of fundamental rights as the core values of the system of labor law has its roots in the recognition of the dignity that all workers have as people. From this perspective, fundamental rights represent the highest values of human dignity, liberty, and equality as their parameters for configuration and compliance, with the result that they must be described, interpreted, and applied on the basis of such recognition. So, fundamental rights constitute the most tangible and manifest legal expression of the dignity of the human being and the values of liberty and equality. This is because the categorization as "fundamental" is a manifestation of ethical content and a concrete value judgment with respect to the inherent dignity of every individual."

Labor Department, Decision No. 3416 / 049, at 6.[8]

To that end, the Labor Code establishes the "*Juzgado de Letras del Trabajoa*" or "Labor Court of the First Instance" in various locations throughout Chile. Labor Code, Art. 415. Critically, the Labor Courts of the First Instance have exclusive, mandatory jurisdiction over, among other things, all "[i]ssues arising between employers and workers regarding the

---

[7] An English translation of select sections of the Labor Code is annexed to the Saloman Decl. as Exhibit 5.

[8] A certified English translation of this Chilean legal precedent is annexed to the Saloman Decl. as Exhibit 6.

application of labor laws or based on the meaning and application of individual or collective labor agreements or agreements and arbitral awards relating to labor matters." *Id.* at Art. 420 a). Moreover, the Labor Court must be presided over by "the judge of the defendant's domicile or that of the place where the services are provided or have been provided, at the option of the plaintiff, without prejudice to that ordered by special laws." *Id.* at Art. 423.

Thus, the entire subject matter which forms the basis of Tradition's application for injunctive relief is governed by the laws and the courts of Chile, not New York. Tradition surely knew, before bringing this action, that even attempting to compel the Chilean Employees and SIF ICAP Chile to forgo their absolute right to have this dispute adjudicated in Chile before the Labor Court is entirely contrary to Chilean law and public policy. The Court should, therefore, decline to exercise jurisdiction because Tradition impermissibly seeks to deprive the Chilean Employees and SIF ICAP Chile of their fundamental right to an adjudication of all claims against them in Chile under Chilean law.

## II.    TRADITION'S ENGLISH CONTRACTS ARE UNENFORCEABLE AS WRITTEN BECAUSE THEY VIOLATE CHILEAN LAW

The English Contracts, executed by the Chilean Employees in Chile, are governed by Chilean law. *See* Civil Code, § 3, Art. 16 ("Things situated in Chile are subject to the laws of Chile, even though the owners are foreigners who do not reside in Chile. . . [T]he effects of contracts made in a foreign country intended to be performed in Chile shall be governed by the laws of Chile."). The Chilean Constitution provides its citizens with the fundamental right of equal treatment under the law and guarantees every person the right to freely choose work, the right of freedom of association, the right to collective bargaining, and a prohibition against all forms of forced work, with the exception of military conscription. *See Constitución Política de*

7

*la República de Chile* [hereinafter the "Chilean Constitution"], Art. 19 (16).[9]  The Labor Code, in turn, governs specific labor and employment issues, including conditions of employment and employment contracts.  *See* Labor Code, Art. 1.  As a matter of Chilean law, labor rights are ingrained in the national public policy, are designed to protect the rights of Chilean employees, and "may not be waived" by Chilean citizens.  *See* Labor Code, Art. 5.

Tradition's English Contracts, as stated below, contain numerous provisions which run directly contrary to the very heart of these (and other) vital principles of Chilean law and public policy.  Tradition purposefully omits the very existence of the Spanish Agreements because Chilean law voids any contract which is contrary to its laws or public policy.  *See* Civil Code, Art. 1462 ("There is an unlawful object in everything that contravenes the Chilean public law.").  Because the English Contracts repeatedly and blatantly contravene Chilean law, they are absolutely null and void.  *See* Civil Code, Art. 1682 ("The nullity produced by an unlawful object or cause, and the nullity produced by the omission of some requirement or formality prescribed by law for the validity of certain acts or contracts in consideration of their nature, . . . are absolute nullities.").  Since its English Contracts are void on their face, Tradition is not entitled to injunctive—or any—relief against any defendant based in any part upon those contracts.

### A.    The English Contracts Are Null And Void Because They Were Not Provided To The Chilean Employees In Spanish.

That the English Contracts were not provided to the Chilean Employees in Spanish renders them null and void.  (Mosqueira Decl., ¶ 11).  Under the Labor Code, an employer is obligated to provide a written employment agreement in Spanish (or translate a copy into

_____

[9] An English translation of select sections of the Chilean Constitution is annexed to the Saloman Decl. as Exhibit 7.

Spanish) within 15 days of the employee's date of hire.  *See* Labor Code, Art. 9; Labor

Department Order No. 1124 – 29 at 3 (March 27, 2003) ("any document that is to have a use or

purpose of an official or public nature must be drafted in the Spanish language or be

accompanied by the respective translation").[10]  The Spanish language requirement specifically

applies to employment contracts:

> the obligation of drawing up an employment contract in writing within the legal
> time periods stipulated by Article 9 of the Labor Code necessarily *presupposes*
> *the obligation of drawing up a copy in the Spanish language*, or attaching the
> respective translation that the parties to the contract have accepted or one made
> by the expert appointed for that purpose.

Id. at 3-4 (Emphasis added).  If the contract is not translated into Spanish, the employment

relationship is controlled by the terms of employment as indicated by the employee.  *See* Labor

Code, Art. 9, ¶ 4.

Because the English Contracts are void, the Spanish Agreements control.  They contain

no post-employment restraints on competition or solicitation of customers and no clause

designating that New York law or venue apply.  Accordingly, there is no basis for a preliminary

injunction to enforce unenforceable provisions in void agreements and the Chilean Employees

"were free to be hired by any other competitors."  Tradition Brf. at 64.

**B.      The English Contracts Are Null And Void Because They Impermissibly**
**Designate That The Laws Of New York, Not Chile, Govern Disputes With**
**The Former Employees.**

Paragraph 7 of the English Contracts mandate that they "shall be governed by, and

construed and enforced in accordance with the internal laws of the States [sic] of New York

without regard to its choice of law provisions."  Compl., Exh. A at ¶ 7.  The very first Article of

the Labor Code, however, makes clear that labor relationships to be performed in Chile cannot

---

[10] A certified English translation of this Chilean legal precedent is annexed to the Saloman Decl.
as Exhibit 8.

be subject to foreign law. *See* Labor Code, Art. 1 ("Labor relations between employers and workers will be regulated by *this* Code and *its* supplementary laws.") (Emphasis added). This blatant violation of Chilean law also voids the English Contracts. *See* Civil Code, Art. 1682.

   C.    **The English Contracts Are Null And Void Because They Impermissibly Mandate That Disputes With The Chilean Employees Proceed In Arbitration And In Court In New York, Not Chile.**

Paragraph 7 of the English Contracts mandates that the AAA and the courts of New York shall have "exclusive jurisdiction" to resolve disputes concerning Chilean Employees. Compl., Exh. A at ¶ 7. As stated, this provision impermissibly violates the exclusive jurisdiction of the Labor Court under Chilean law. Labor Code, Art. 415 and Art. 420 a); *accord* Civil Code, Art. 1462 ("[T]he promise of agreeing in Chile to submit to a jurisdiction that is not recognized by the laws of Chile is null due to vice of the object."). This blatant violation of the Civil Code and Labor Code also voids the English Contracts. *See* Civil Code, Art. 1682.

   D.    **The English Contracts Are Null And Void Because They Impermissibly Restrain The Chilean Employees' Freedom To Work In Chile.**

The heart of Tradition's application for injunctive relief is its claim that the Chilean Employees breached their post-employment restrictive covenants within the English Contracts and that SIF ICAP Chile induced those breaches. The non-competition and non-solicitation clauses in the English Contracts, however, are void under Chilean law because they impermissibly limit the Chilean Employees' freedom to work, a fundamental principle of Chilean public policy guaranteed to all Chilean citizens in the Chilean Constitution itself:

> All persons have the right to freedom in hiring and freedom in choice of work with just compensation. . . . *No work of any kind may be prohibited*, except for that which conflicts with public morality, safety or health, or as required by the national interest and so declared by law.

Chilean Constitution, Chapter III, Art. 19, ¶ 16 (emphasis added).

At all times, the Chilean Employees were, and remain, lawfully permitted to:

- encourage their co-workers to leave Tradition for employment with another brokerage business elsewhere;

- discuss the prospect of new employment with another brokerage business without disclosing those discussions to Tradition;

- interview for new employment with another brokerage business;

- enter into an agreement to work with another brokerage business;

- accept employment with another brokerage business; or

- solicit business from any Tradition customer for another brokerage business.

Remarkably, the English Contracts—draconian and unenforceable under even American standards—absolutely prohibit each of these acts.  *See* Compl., Exh. A, ¶¶ 5 C., D. (ii), D. (iii), D. (vii), and D. (viii).  The material terms which Tradition demands that this Court enforce over Chilean citizens, therefore, are unconstitutional in Chile.

The decision in Court of Appeals of Santiago, No. 8165-2006 (May 20, 2009),[11] is instructive.  There, the Chilean Court of Appeals affirmed the rejection of a substantially similar post-employment restrictive covenant because:

> a clause of this nature constitutes a clear restriction of the sort prohibited by the Constitution of Chile, given that such clause prevents the worker from legitimately exercising a right, that is, carrying out a specific employment activity, constraining not only his "freedom to work" but also his "freedom of preference," in view of the fact that he is ultimately required to develop himself professionally in other areas, beyond his specialty and desire.

*Id*. at 2.  The "mere consent" of the worker to the anti-competition provision "does not make infringements of fundamental rights disappear when contracting parties are barred from so." *Id*. The clause was further held invalid because the "company's own risk cannot be passed on to a former employee by preventing him, in absolute terms, from having access to a legitimate source

---

[11] A certified English translation of this Chilean legal precedent is annexed to the Saloman Decl. as Exhibit 9.

of work that is pertinent to his own knowledge and vocation without assuring him a minimal

level of economic stability."  *Id.*

The rejection of the post-employment restraint was, therefore, deemed "a defect of

absolute nullity that is evident in the record or contract, susceptible to being declared by the

court *ex oficio*, given that Clause 11 of the employment contract violates the constitutional rule

that guarantees the right to work and the protection thereof, tainting that clause as an unlawful

purpose under the terms provided in Article 1462 of the Civil Code due to violation of Chilean

public law." *Id.  Accord* Court of Appeals of Santiago, No. 3354-2008, at 3 (May 6, 2009)[12]:

> An agreement of that nature constitutes a restriction that the Constitution
> prohibits, given precisely that it presupposes preventing the worker access to a
> specific source of employment and, indirectly, his employment is directed toward
> other areas of economic activity.  In this regard, it is unavoidable to note that in a
> job market such as the Chilean one – of objectively limited proportions – and in
> the case of specialized professions, this restriction takes on well-known
> significance, to the extent that, in fact, it can entail forced unemployment or the
> need to be employed in activities outside the worker's skills.

*See also* Court of Appeals of Santiago, No. 11100-2004 (April 6, 2009)[13] ("the right to work

consists of the constitutional right that authorizes any person to look for, obtain, practice, engage

in or perform any remunerative activity, profession or trade that is lawful, *i.e.*, not prohibited by

law."  These rules of a constitutional rank in fact enshrine the "Economic Public Order.")

(internal citations omitted); Labor Department, Decision No. 5620/300, at 3 (September 22,

1997)[14] ("the parties may not agree on a clause obligating the employee to abstain from any

---

[12] A certified English translation of this Chilean legal precedent is annexed to the Saloman Decl.
as Exhibit 10.

[13] A certified English translation of this Chilean legal precedent is annexed to the Saloman Decl.
as Exhibit 11.

[14] A certified English translation of this Chilean legal precedent is annexed to the Saloman Decl.
as Exhibit 12.

remunerated activity outside the Company, . . . after termination of the labor relationship"

because such a clause "is not legal as it violates constitutional and legal rules regulating freely

contracting and choosing of work" and, consequently, "there is no legal impediment for a worker

to carry out activities related to the business of the company after termination of the employment

relationship.")  Injunctive relief mandating the enforcement of Contracts which are null, void,

and unenforceable under Chilean law is, therefore, impermissible.  *See* Civil Code, Art. 1682.

> E.     **Service Of Process Upon The Chilean Employees Remains Ineffective Under Chilean Law.**

This Court's December 22, 2009 Order permitted Tradition to serve the Chilean

Employees by mail "as set forth in their respective [English Contracts] with Tradition."  Order

at 4.  Because the Spanish Agreements do not contain a notice provision and the English

Contracts are void, the notice provisions contained in Paragraph 8 of the English Contracts

deprive the Chilean Employees of their rights under Chilean law.  *See* Mosqueira Decl., Exhibit

A; Compl., Exh. 1 at ¶ 8.

For service of process to be effective over the Chilean Employees, a copy of the

summons and complaint "must be served personally" upon each defendant.  Civil Procedural

Code, Art. 40 (43).[15]   Service by mail is only permitted if a defendant cannot be personally

found after two different tries but it is certified that the defendant is present in the jurisdiction of

the proceeding or at his or her place of business.  Procedural Code, Art. 44.  Such a certification

is absent here, rendering service invalid upon the Chilean Employees.  (Mosqueira Decl., ¶1).

---

[15] An English translation of select sections of the Procedural Code is annexed to the Saloman Decl. as Exhibit 13.

**F.    Reforming The English Contracts Is Inappropriate.**

Remarkably, even the English Contracts' severability provision is unenforceable under Chilean law.  That provision states that, if the restrictive covenants are held to be unenforceable, then the Chilean Employees still must return all profits they earned *during and after* their employment with Tradition for a period of 14 months.  *See* Compl., Exh. A, ¶ 5 E. (ii).  There is no basis for such a punitive provision in Chile.

Having gutted the material terms at issue in this case, there is nothing left in the English Contracts for the Court to reform.  Even if inclined to "blue pencil" the English Contracts, the Court would be compelled to re-write them from scratch.  That is clearly inappropriate under New York law.  *See Netherby Ltd. v. Jones Apparel Group, Inc.*, No. 04 Civ. 7028 (GEL), 2007 U.S. Dist. LEXIS 25720 at *20 (S.D.N.Y. April 5, 2007) (court may not "rewrite the contract in accordance with its instinct for the dispensation of equity upon the facts of a given case.") (quoting *Terwilliger v. Terwilliger*, 205 F.3d 240, 245 (2d Cir. 2000); *Earthweb Inc. v. Mark Schlack*, 71 F. Supp. 2d 299, 311 (S.D.N.Y. 1999) ("This Court declines to re-write the parties' employment agreement"); *see also Baer v. Chase*, No. Civ.A. 02-CV-2334 (JAP), 2004 WL 350050, at *8 (D.N.J. Feb. 20, 2004) ("The Plaintiff is not merely asking the Court to simply 'plug gaps;' he is asking it to construe essential terms where there are none, and then write the contract for the parties. The Court will not do so"), *aff'd*, 392 F.3d 609 (3d Cir. 2004).

14

III.   **BECAUSE TRADITION KNEW THAT ITS ENGLISH CONTRACTS ARE UNENFORCEABLE IN CHILE, ITS BLATANT FORUM SHOPPING SHOULD BE REJECTED BY THE COURT**

   A.   **Tradition's Reliance Upon A Forum Selection Clause—Known To Be Unlawful In Chile—In The Hope Of Obtaining Injunctive Relief In New York—That Is Also Unlawful In Chile—Is Impermissible Forum Shopping In Its Purest Form.**

By the "thorough investigation" conducted *before* filing this lawsuit, Tradition must have known that its forum selection clause is *per se* invalid under Chilean law.  *See* Labor Code, Art. 415 and Art. 420 a); Civil Code, Art. 1462 and Art. 1682.  Tradition knew that its English Contracts are unenforceable in Chile and that a Chilean court will doubtless reject any attempt to enforce any part of those Contracts.  Tradition also knew that the entirety of their (albeit frivolous) claims against all of the Defendants are rooted in Chile, not New York.  Tradition knew that its only hope for obtaining injunctive relief of any kind was to rush an injunction application through the New York courts during the holidays with the hope that the Spanish Agreements and the rights of the Foreign Defendants would be lost in the shuffle.  Tradition's shameless forum shopping renders its forum selection clause meaningless.

While courts generally defer to a plaintiff's choice of forum, such deference is "not dispositive, and it may be overcome."  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).  When "it becomes apparent that plaintiff's choice of forum was not made with regard to convenience, and instead was made for 'forum-shopping reasons,' it is acceptable to afford plaintiff's choice less deference."  *BlackRock, Inc. v. Schroders PLC*, No. 07 Civ. 3183 (PKL), 2007 U.S. Dist. LEXIS 39279, at *8 (S.D.N.Y. May 30, 2007) (quoting *Iragorri*, 274 F.3d at 71).  "The degree of deference depends upon the '*bona fide* connection' between the lawsuit and the forum of choice."  *Id.*

15

In light of Tradition's improper pursuit of this matter in New York, the Court should decline to continue to exercise jurisdiction over this case. *See Iragorri*, 274 F.3d at 72 ("attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case" are evidence of forum shopping).

**B.     Tradition's Forum Selection Clause Is Unenforceable Under New York Law.**

Even if Tradition's impermissible forum selection clause is given any credence, New York recognizes that a forum selection clause will not be enforced unless the clause: (1) was "reasonably communicated to the parties," (2) was not "obtained through fraud or overreaching," and (3) its "enforcement would [not] be unreasonable and unjust." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (internal citation omitted). While Tradition would have to satisfy each of these three elements to enforce its forum selection clause, it cannot satisfy even one of them here.

The forum selection clause is clearly the product of overreaching because such a clause—which deprives the Chilean Employees and SIF ICAP Chile of their legal rights—is *per se* unlawful. *See* Labor Code, Art. 420; Civil Code, Art. 1462; Civil Code, Art. 1682. The illegality of the forum selection clause—the very linchpin of Tradition's tenuous toehold on New York jurisdiction—is surely overreaching and unreasonable if applied to the Chilean Employees.

In addition, the forum selection clause was communicated to the Chilean Employees in English, not their native Spanish. This is both unlawful under Chilean law and unreasonable in this context. *See* Labor Code, Art. 9, ¶ 2; Labor Department Order No. 1124 – 29 at 3 (March 27, 2003).

Enforcement of the New York forum selection clause is, therefore, "unreasonable and unjust" in the face of (i) the competing and contradictory Spanish Agreement (which references Chilean laws under which all disputes must be brought the Chilean Labor Court), (ii) the

16

unenforceable and unlawful English Contract, *and* (iii) Tradition's forum shopping.  *Jones v.*

*Weibrecht*, 901 F.2d 17, 18 (2d Cir. 1990) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S.

1, 15 (1972)).  *Accord Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 391

(S.D.N.Y. 2006) (same); *JSC Surgutneftegaz v. President & Fellows of Harvard College*, No.

04-civ-6069 (RCC), 2005 WL 1863676 (S.D.N.Y. Aug. 3, 2005) (forum-selection clause

unenforceable if "the Court finds that it is unjust.") *aff'd*, 167 Fed. App'x 266 (2d Cir. 2006).

### C.    The Ambiguity Created By The English Contracts And The Spanish Agreements Must Be Construed Against Tradition.

The Court can only approve the forum selection clause in the English Contracts *if* the

Court ignores the confusion created by the existence of the Spanish Agreement—as Tradition

has done in this case thus far.  Under well-settled New York law, any uncertainty or ambiguity

created by the simultaneous interpretation of the Spanish Agreements and the English Contracts

must "be construed most strongly against" Tradition because Tradition drafted both documents.

*Croman v. Wacholder*, 2 A.D.3d 140, 143, 764 N.Y.S.2d 219, 221 (3rd Dep't 2003); *see also*

*Jacobson v Sassower*, 66 N.Y.2d 991, 993, 499 N.Y.S.2d 381, 489 N.E.2d 1283 (1985); *67 Wall*

*St. Co. v Franklin Natl. Bank*, 37 N.Y.2d 245, 249, 371 N.Y.S.2d 915, 333 N.E.2d 184 (1975)

("In cases of doubt or ambiguity, a contract must be construed most strongly against the party

who prepared it, and favorably to a party who had no voice in the selection of its language.").

*Zamer v. Diliddo*, No. 97-CV-32S(H), 1997 WL 578753 (W.D.N.Y. Aug. 18, 1997), is

instructive.  There, plaintiff attempted to enforce defendants' license agreement to prevent them

from soliciting plaintiff's customers for a competitor.  *Id.* at *1-2.  Plaintiff also asserted that

defendants had violated similar prohibitions within their shareholders agreement.  *Id.* at *3.

Because the two agreements contained different forum selection clauses, the district court gave

weight to neither:

17

> Accordingly, I find that the forum selection clause in the license agreement is not determinative of the motion to transfer. Nor does it shift the burden of proof to plaintiff. Rather, the forum selection clause is but one of the factors for the court to consider in determining whether the action should be transferred.

*Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988); *Red Bull Assocs. v. Best Western Int'l., Inc.*, 862 F.2d 963, 967 (2d Cir. 1988); *Falconwood Fin. Corp. v. Griffin*, 838 F. Supp. 836, 839-40 (S.D.N.Y. 1993); *Water Energizers Ltd. v. Water Energizers, Inc.*, 788 F. Supp. 208, 212 n. 2 (S.D.N.Y. 1992); and *Intercontinental Monetary Corp. v. Performance Guarantees, Inc.*, 705 F. Supp. 144, 151 (S.D.N.Y. 1989)).

Likewise, in *Hope's Windows, Inc. v. Woodbridge Glass, Inc.*, No. 04-CV-00378 (JTE), slip op. (W.D.N.Y. Dec. 6, 2004), the district court followed this approach when faced with equally valid California and New York forum clauses and "no clear agreement as to which forum selection clause governed." (Mem. and Order at 4). Accordingly, the court canceled the conflicting terms from the contract and applied the standard minimum contacts analysis to resolve the jurisdictional question. *Id.* at 8 (citing cases). *Accord Lory Fabrics, Inc. v. Dress Rehearsal, Inc.*, 78 A.D.2d 262, 269, 434 N.Y.S.2d 359, 364 (1st Dep't 1980) (when faced with two competing arbitration clauses with different venue provisions, lower court appropriately directed arbitration to proceed in venue which "was the most convenient place to try this arbitrable dispute.").

**D.    Tradition's Abuse Of Process Is A Waste Of Judicial Resources Because Chile Will Not Honor An Award Or Order In Tradition's Favor.**

Even in the unlikely event that Tradition is able to persuade this Court to ignore the fatal defects in its English Contracts, there can be no merit to continuing the New York litigation because an order stopping the Chilean Employees from working for SIF ICAP Chile or compelling the Chilean Employees to arbitrate before the American Arbitration Association are unenforceable in Chile. Under Chilean law, the judgment of a foreign court will only be given

18

effect in Chile if the judgment "contain[s] nothing contrary to the laws of the Republic." Procedural Code, Art. 245 (242) (1).  Likewise, a foreign judgment will be void in Chile if it "conflict[s] with national jurisdiction."  *Id.* at Art. 245 (242) (2).  As stated, Tradition's English Contracts are unenforceable in Chile for myriad reasons.  An order which attempts to subject the Chilean Employees to enforcement of any part of those Contracts, therefore, surely will be rejected in Chile.

Because an injunction issued by this Court is ineffectual in Chile, any further proceedings in New York are a waste of judicial resources.  Indeed, "[a] court should not issue an unenforceable injunction: The rule that a court of equity will not issue an unenforceable decree of injunction comprehends [as a] reason [] for denying injunctive relief [] that the court . . . does not have the means to punish disobedience once discovered."  *In re Estate of Ferdinand Marcos*, 94 F.3d 539, 545 (9th Cir. 1996) (citing *Hamilton v. MacDonald,* 503 F.2d 1138, 1146 (9th Cir. 1974).  *See also Virginian Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 550 (1937) ("[A] court of equity may refuse to give any relief when it is apparent that that which it can give will not be effective or of benefit to the plaintiff."); 11A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* §2945 ("[T]he court may decide that it lacks the necessary power to enforce a decree so that issuing one might prove to be a futile gesture.")

Likewise, Tradition's application for injunctive relief in aid of arbitration is meaningless because, as stated, the Chilean Employees cannot be compelled to arbitrate their dispute in the United States as a matter of Chilean law.  *See* Civil Code, Art. 1462; Labor Code, Art. 420. Even in the unlikely event that Tradition were to successfully obtain an award from the AAA, such award would be also unenforceable as against the Chilean Employees because the international convention governing foreign arbitral awards (of which Chile and the United States

19

are parties), specifically exempts from enforcement awards which are contrary to the public policy of the citizen's home country. *See United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, Art. V 2 (b) (New York, 1958) ("CREFAA") ("Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that: . . . The recognition or enforcement of the award would be contrary to the public policy of that country."). This public policy limitation applies where enforcement would violate the forum state's "most basic notions of morality and justice." *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Parsons*, 508 F.2d 969, 974 (2d Cir. 1974).

Moreover, Article 2 of the CREFAA prohibits the enforcement of a contracted-for arbitration agreement if a court "finds that the said agreement is null and void, inoperative or incapable of being performed." CREFAA, Art. 2, Paragraph 3. If the court determines that a binding agreement was not made, "petitioner's request to compel arbitration must be denied." *nix Bulk Carriers Ltd. v. Oldendorff Carriers GMBH & Co., KG*, No. 01-Civ.-11777, 2002 WL 31478198, *2 (S.D.N.Y. Nov. 6, 2002); *Sphere Drake Insurance Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 30 n. 2 (citation omitted) (the relevant standard in deciding whether to compel arbitration under the CREFAA is the FAA's requirement that the court be "satisfied the making of the agreement for arbitration ... is not in issue.").

Here, the English Contracts' arbitration clauses are void as a matter of Chilean law. In the absence of a valid contract to arbitrate, Tradition's application for an injunction in aid of (non-existent) arbitration "must be denied." *Phoenix Bulk Carriers Ltd. v. Oldendorff Carriers Gmbh & Co., KG*, 2002 WL 31478198, *2 (S.D.N.Y. Nov. 6, 2002); *see, e.g., Andolina Shipping Ltd. v. TBS Eurolines Ltd.*, 84 F.Supp.2d 527, 531 (S.D.N.Y. 2000) (denying petitioner's request